[No. 8487.]

## LOCKARD V. WARE, CONSERVATOR.

1. APPEAL AND ERROR—*Immaterial Questions Not Considered.* Plaintiff sued in the double capacity of conservator of a lunatic, and as the administrator of the same lunatic. It appearing that he was in possession of the note which was the subject matter of the action, after his appointment as administrator, and the cause having been determined on its merits, the court of review declined to consider the duplication of title under which the cause was instituted. (355.)

Action by an administrator. Plea of payment, denied, and trial upon this issue. All questions as to when defendants claim for services, which he relied upon as payment, was filed against the estate, and as to the notice of filing, *held* immaterial. (355.)

Possible error in the framing of the issue, corrected in the admission of testimony, and the charge to the jury, not considered upon error. (356.)

2. NEW TRIAL—*Verdict Not Supported by Testimony,* will not be accepted.

The evidence examined and held insufficient to support the verdict. (358-359.)

*Error to Garfield District Court.* Hon. JOHN T. SHUMATE, Judge.

Mr. L. E. KENWORTHY and Mr. J. W. DOLLISON, for plaintiff in error.

Mr. EDWARD T. TAYLOR and Mr. CHARLES W. TAYLOR, for defendant in error.

Mr. Justice HILL delivered the opinion of the court.

The defendant in error (hereafter called the plaintiff) brought this action as conservator, and administrator *de bonis non* of the estate of B. S. Hinds, deceased, to recover from the plaintiff in error (hereafter called the defendant) $200, with interest, upon a promissory note executed and delivered by the defendant to the deceased during his lifetime. Judgment was in favor of the plaintiff for $248, the face of the note with interest.

The record discloses, that upon September 23, 1912, the plaintiff was appointed conservator of the estate of Mr. Hinds; that he continued to act in that capacity until Mr. Hind's death, October 8, 1912, and may have pretended to act in that capacity thereafter, but on November 22, 1912, he was appointed administrator *de bonis non* of the Hinds' estate. Considerable argument is presented concerning his authority, in January, 1913, to bring this action in the dual capacity of conservator and administrator, but as the case was disposed of on its merits and the issue being whether the defendant was owing to the estate the amount of the note, we think it unnecessary to go into the question. He was in possession of the note after he was appointed administrator, and it is immaterial to the defendant when he ceased to hold it as conservator.

The defendant admits the execution of the note but alleges payment account of services rendered as a physician to the deceased during his lifetime. This latter was denied.

This was the issue tried, for which reason the argument concerning when the defendant's claim was filed against the estate, the notice of its filing, etc., is immaterial.

The defendant's contention that the statute of nonclaim cannot be invoked to defeat a setoff or counterclaim of a debtor against an estate, where the action is brought against him by the administrator, appears to have been accepted as the correct rule by the trial court in its admission of the testimony, and by its instructions to the jury, for which reason it is unnecessary to consider the court's ruling in allowing it to be made an issue in the pleadings.

The serious controversy is over whether the evidence is sufficient to support the findings. There is testimony upon behalf of the defendant that, eliminating certain credits, including the note sued on, at the time of his death, the deceased was owing the defendant $413 for professional services as his physician and surgeon. This was shown by the testimony of the defendant's wife, to the effect that she kept his book of original entry, which was in her handwriting; that it was correct, and that the most of the services charged for were, to her personal knowledge, rendered by the defendant to the deceased. This book of original entry was admitted in evidence. Her testimony is corroborated, in part, by that of a Mr. Dennis, who was employed as an attendant to Mr. Hinds, and testified that to his personal knowledge the defendant was repeatedly called to the house of Mr. Hinds as his physician, to which calls he responded, and performed services in that capacity, and that at times Mr. Hinds went to defendant's office where he was treated by the defendant, some times as often as two or three times a day. The testimony of a Mr. Railey is, that, to his personal knowledge, the defendant had rendered services as a physician to the deceased. The testimony of Dr. Crook is that the fees charged, as shown by the defendant's books, are the regular schedule of fees charged by reputable

physicians in that county, and that the amounts are reasonable for the services purported to have been rendered. It is admitted that the defendant was a duly licensed physician and surgeon. To overcome this defense, the plaintiff testified, that, after his appointment as conservator of Mr. Hinds' estate, he called upon the defendant for a statement of his account against the estate; that the defendant furnished a statement purporting to be up to September the 6th, 1912. This statement was not itemized, but gave the amount due the defendant from Hinds as $341.00 and the amount received from Hinds by the defendant as $364.00, leaving a balance due Hinds of $23.00. The credit given as received from Hinds was itemized in the statement as follows: Note, June 19, 1911, $200.00; Interest on note, $24.00; Check 6-19-11, $100.00; Check 3-15-12, $15.00; Check 7-8-12, $25.00, total $364.00. The items of note and interest unquestionably refer to the note sued upon. There is no conflict in the evidence concerning this. This action was commenced in the County Court of Garfield County, in January, 1913. The plaintiff's proof further showed that on February 27, 1913, and before the first trial, the defendant filed in the County Court in the matter of this estate, his claim against the estate verified, stating that there was a balance due him from the estate of $408.00, after allowing all just credits. The book account contains two items of dates subsequent to those contained in the first statements, viz, September 6, 1912, $3.00; September 18, following, $2.00. On May 2, 1913, the defendant filed his answer in this suit alleging payment of the notes sued on by the rendition of medical services, etc.

The plaintiff contends that the book account, or certain pages thereof, admitted in evidence, was mutilated, and that the statement furnished the plaintiff as conservator, as well as the claim filed in the County Court by the defendant, and the mutilation of the defendant's book of original

entry impeach the accuracy of the book account, as well as the testimony of the defendant's witnesses, for which reason there was a conflict in the testimony sufficient to go to the jury and its finding should be accepted as conclusive. We cannot agree that the facts justify the application of this rule, for the reason that the record fails to disclose any conflict in the testimony that will justify the verdict rendered. The only evidence of any erasures or alterations of the book of original entry presented in the record is in the adding and footing up of the columns. If we assume, as counsel contends, that the statements rendered by the defendant to the plaintiff impeach the correctness of his book accounts, and we accept the latter as correct, when we add the items rendered, after the date which the statement purports to cover, the defendant would be owing the estate $18.00. This would be to accept the evidence in the most favorable light to the plaintiff. By objection of the plaintiff, the defendant was not allowed to testify, and this statement stands unexplained, but the testimony of the three witnesses stands uncontradicted that the defendant rendered practically, daily, services for the deceased, as his physician for some time. This includes a great many night trips. The plaintiff offered no testimony to contradict this showing. The record further discloses that during this period, and while the deceased held this note against the defendant, he gave to the defendant three checks in the sums of $100.00, $15.00 and $25.00, respectively, to apply upon his account for professional services. This stands undisputed. The fact that the defendant's claim, filed in the estate, in the sum of $408.00 did not make any allowance as credit for the note, interest and the checks, does not tend to impeach the testimony that the services were rendered, but when considered with the other testimony it would tend to show that the credits of payment by the check, and the amount of the note and interest had intentionally, or other-

wise, been omitted therefrom. In order to sustain a verdict, there must be some reason for it; there must be some testimony to support it. *Burns-Moore Co. v. Watson,* 45 Colo. 91, 101 Pac. 335; *Ferrari v. Brooks-Harrison Fuel Co.,* 53 Colo. 259, 125 Pac. 125.

The defendant having made a *prima facie* defense by competent testimony, the burden was upon the plaintiff to, in some manner, challenge it. The nearest he came to doing so was by the statement, purported to have been rendered by the defendant, and when left standing unexplained, it was in conflict with a part of his position at the trial; but as stated, if it is accepted as true and as impeaching that part of the testimony pertaining to the amount owing for professional services, it would not justify the finding of the jury.

The judgment will be reversed.

*Reversed.*

Chief Justice GABBERT and Mr. Justice TELLER concur.